### SUTHERLAND *v.* STRAW and another.

*(Circuit Court, D. Maine. ———, 1. 80.)*

COMPROMISE—AGREEMENT FOR ENFORCEMENT OF.—It would seem that where an agreement is made for the compromise of litigation, involving a great number of details, some not within the subject-matter of the suit, specific performance thereof cannot be compelled upon an interlocutory application.

PARTIES—TRANSFER BY COMPLAINANT OF HIS RIGHT—RIGHTS OF ASSIGNEE—DISMISSAL.—Complainant in this action having, before answer, transferred all his rights and interest therein to defendant Straw, and constituted him his attorney, irrevocable, to prosecute, compromise, etc., such action, *held*, that the defendant Straw is entitled, if he so desired, to a decree dismissing the bill, without costs.

*Charles E. Clifford,* for complainant.

*Josiah H. Drummond,* for respondents.

FOX, D. J. On the thirteenth day of September last this bill was filed, in which it was alleged that on December 10, 1875, Chapin had sold the complete 10 acres of land in Monson, in this district, part of lot 15, for the sum of $50,000, a portion of this amount having been paid by complainant's note for $15,000, secured by a mortgage of these premises; that these premises, with other parcels of real estate, were then under mortgage to the Dexter Savings Bank from said

Chapin to secure the payment of his note for $1,600, all which was unknown to complainant, and that there were also other encumbrances of the premises to the amount of $30,-000; that February 24, 1876, the savings bank took steps to foreclose its mortgage, which were afterwards abandoned, the said mortgage having been paid, and on March 13, 1879, the bank released the 10 acres to D. R. Straw for $2,000, and on the same day deeded to Straw the residue of the premises conveyed to it in mortgage, and that this was done to defraud Chapin's creditors; that on the eleventh of April, 1877, the complainant, believing Straw's title to be valid, purchased of Straw the 10 acres, relying on the false representations of the respondents that the title of Straw, under the foreclosure by the savings bank, was valid, and that his mortgage of $15,000 was invalid; that the consideration for the purchase by complainant of the 10 acres from Straw was $15,000, of which $7,000 was paid by a mortgage of the premises to secure three notes of complainant; that Straw agreed to give a warranty deed of the premises, but by reason of certain clauses in the deed it was simply a release and quitclaim of Straw's interest, and the complainant was deceived, and induced to accept said deed as a deed of warranty, it being drawn on a blank of that description, and changed by the addition of these words and clauses; that complainant has paid the $7,000, and that the savings bank never acquired any title to the premises under their mortgage and pretended foreclosure.

It is also charged in the bill that subsequent to April 11, 1877, Straw pretended to convey to complainant, by deed of warranty, 85 acres of other lands, and that he paid about $15,000 as a consideration therefor, but said deed was fraudulently drawn on a warranty blank, and altered so as to be in effect a release. The prayer of the bill is that the respondents may be decreed to pay back all sums they have thus fraudulently obtained from the complainant. Before any answer was filed the parties to this suit arranged terms of settlement of this and other controversies, some of which were in litigation before the circuit court of Massachusetts,

and on the twenty-sixth of December last various documents were executed between them; six being made by the complainants, in completing such settlement, and two by the respondents. By one the complainant, with Chapin and E. B. Loring, in consideration of $8,000, released to Straw all of lot 15, with all machinery and fixtures connected with the quarries.

This deed was recorded January 13th. Sutherland also executed at the same time an assignment to Straw of all claims or causes of action in a certain bill in equity pending in the circuit court for the Massachusetts district, No. 1,273, against Abel Howe and others, with all right to any sums of money to be realized from said bill in equity. By the same instrument the complainant sold, assigned and transferred unto Straw all rights, claims, demands, actions or causes of action against both of the respondents in this bill in equity, now before this court, No. 216, together with all sums of money, benefits or advantages which can or may be obtained by reason of said bill in equity, and also assigned, sold and transferred unto Straw all rights, claims, demands, actions or causes of actions which he might have against said Albert W. Chapin in a certain action instituted by him against Chapin, October 7, 1879, and all sums of money, etc., which can or may be obtained by virtue of said suit. By the same instruments Sutherland constituted Straw his attorney irrevocable to prosecute, compromise, re-assign or discharge said bills in equity, suits, writs, or to consent to the entry of any and all judgments, orders or decrees thereon that he may desire, and to appoint other attorneys with like authority, saving said Sutherland harmless from all costs or damages; and the instrument concluded by a covenant on the part of Sutherland to deliver up to Straw all letters, papers, deeds, etc., relating to the matters thus assigned to him.

The third instrument thus executed was a general release by Sutherland of Chapin and Straw from all causes of action, claims or demands, excepting a note of Chapin for $500. The next instrument, No. 4, was complainant's transfer and assignment to Straw of all causes of action

against Howe & Higbee, The Higbee Company *et al.* No. 5 was Sutherland's receipt for $2,000 from Straw, on account of settlement of suits against Albert W. Chapin, and No. 6 was an agreement by Sutherland to act as an attorney for Straw in these matters so assigned, and other matters relative to the Monson slate quarries, without other charges than his traveling expenses, and 5 per cent. commission on the net proceeds, which may be received by Straw for the interest this day transferred to him in case he was personally instrumental in disposing of said interests.

Straw, on his part, made and executed an obligation to Sutherland to pay him not exceeding $4,400, as he should receive it, over and above $5,000 out of the suits and claims assigned by Sutherland, to be paid within 30 days after the money is received, but not to exceed the $4,400 and the 5 per cent. commission as agreed in No. 6; and the performance of this agreement was secured by a bond of Straw to Sutherland in the penalty of $8,000, on condition that Straw shall well and truly carry out his agreements without collusion with * * and John Y. Fichett *et al.*, to defeat the payment of said $4,400 upon the sale of certain quarries, etc.

The attorneys of Straw on his behalf now come and move that a decree be entered in the cause here pending, and that the bill be dismissed without costs to either party. The complainant on his part consents to the above entry, with the addition of the words " without prejudice," and if declined moves that the respondents be required to answer the bill, and upon these motions the cause has now been heard. The counsel of the complainant contends that the arrangements and contracts of December 26th, above recited, were obtained by fraud, and are not binding upon him, but are utterly null and void. The complainant, however, has not made affidavit to any facts or circumstances whatever to establish the charges of his counsel, and in fact has utterly omitted to present for the consideration of the court any affidavit in his own behalf, but has filed the affidavit of one John Y. Fichett, one of the parties named in the bond of Straw to the complain-

ant, with whom there was to be no collusion to defeat the payment of the $4,400 by Straw to Sutherland.

From this affidavit it appears that Fichett had arranged for the sale of the Eureka slate quarry for the sum of $30,000, on behalf of Straw and Chapin, and that these parties were desirous that the sale should not be communicated to Sutherland, but should be delayed and not completed until after his return to Chicago, when they would be ready to convey the property.

In the opinion of the court this affidavit is of but little or no consequence, as it does not show any collusion of Straw and Chapin with this affiant to defeat the sale, but rather an arrangement on their part to carry out and complete it after Sutherland returns home. There may have existed very satisfactory reasons for the respondents wishing to thus delay the disposal of this estate, and it would by no means follow that there was on their part, by such delay, any breach of the condition of Straw's bond to the complainant.

Straw has filed his affidavit denying all fraud in the settlement, and averring that at the time, December 20th, he paid complainant $1,000 in cash, and gave a note for $1,000, since paid; that he also gave him the bond for $8,000, upon which an action was commenced in this court, January 22, 1880, and served on him February 3d; that Sutherland has never offered to refund these payments made to him, and has assigned to these parties said bond now in suit.

Upon this state of facts have the respondents a right to have a decree entered dismissing the bill without costs? The counsel have not, on either side, referred the court to any authorities bearing upon the question here involved, and the researches of the court have not disclosed any case decisive of the matter. Many authorities are to be found in the decisions of the various courts of equity in Great Britain bearing upon the question of compromises of pending suits, and how far such compromises can be enforced by motion in the cause, and under what circumstances supplementary proceedings may be required to perfect and complete such settlements. The latest authority which I have met with is

*Pryer* v. *Gribble,* 10 Chan. (Appeal Cases,) 539, in which most of the prior authorities are referred to. *James,* L. J., in substance, states the practice to be that any agreement of this kind involving a great number of details, some of which could not have been within the subject of the suit, cannot be specifically performed upon interlocutory application. That suit was one for the redemption of a mortgage of a brick-yard, and the parties entered into an agreement by which the defendant was to receive all moneys due to him on account of the concern, and pay all he might owe, and guaranty the plaintiff against the payment thereof, the business to be carried on by defendant for a time, he paying all expenses in connection therewith, and receiving all moneys for sale of bricks, and accounting therefor.

*James,* L. J., further says: "An order to that effect could not have been made in the suit at all, nor could the court have made the order that the defendant should hand over to the plaintiff all deeds and other securities in his possession, relating to the brick-yard, or that both parties should execute all necessary legal documents to give effect to that agreement. It is a contract, the specific performance of which is beyond the scope of this suit, and cannot be obtained except by a suit regularly instituted for that purpose. If this were a simple agreement between the parties to stay a suit, or have a bill dismissed, very likely the court ought to give effect to that as it would give effect to any other agreement relating solely to the conduct and prosecution of the suit. But when these matters are mixed up with a great number of details, money to be paid, and acts to be performed, it is far beyond the scope, as it seems to me, of an interlocutory motion, and far outside the jurisdiction of this court on an interlocutory motion.

In the present instance the arrangement entered into by the parties in December involved not only the settlement and disposition of this suit, but of others pending in other tribunals, and the transfer of various parcels of other property, both real and personal, most of which were wholly without the present controversy, and could not, in any way, have been within the

subject of this suit, but were wholly beyond the scope of it. Upon an examination of this case and others therein referred to, and especially *Askew* v. *Wellington,* 9 Hare, 65, the court was at first strongly inclined to the opinion that the present case must be controlled by these decisions, and that the respondents were not entitled to have the decree as prayed for. Upon further reflection, however, the conclusion is that the instruments executed by this complainant on the twenty-sixth of December last are not to be deemed as the equivalents of a compromise, but are of a much more comprehensive and significant character, and by their legal operation and effect do confer upon Straw the entire control and direction of this cause.

By paper No. 2 the complainant conveyed to Straw his entire interest in lot 15, and by No. 3 he assigned absolutely, without any reservation, the present suit and cause of action, and constituted Straw his attorney, irrevocable, to dispose of said cause by such entry or decree therein as he should choose to make, saving the complainant from all liability for costs. A valuable consideration, to the extent of $2,000, was then paid to complainant, by Straw, for this assignment, and also a bond given for a further payment of $4,400, when realized from sales of the property. This sum of money the complainant retains, and does not propose to pay back any part of it, and by an action at law upon the bond is still persisting in enforcing the validity of the agreements of December 26th; and, what is of more significance, the complainant, up to the present time, has not, by his own statements under oath, advised the court that these agreements were invalid, or that in any respect any fraud was practiced upon him at the time they were agreed to by him.

By these instruments, thus recognized by the silence of the complainant as just and reasonable, he parted with all right, title and interest in this suit and the controversy therein involved, and conveyed the same to Straw, authorizing him to dispose of the same as he should elect. The complainant from that time had no further interest in this suit or any right to control the same, or to be heard or represented in

relation to it. He must be deemed as having withdrawn therefrom in behalf of Straw, who, from thence, was the only party interested in the cause, and who, by the complainant's withdrawal from and abandonment of the cause, was at liberty to make such disposal thereof as he saw fit. The only party to be recognized by the court in the management and control of the action was Straw, and he must from thenceforth, being the owner of the action and the claim, be permitted to do as he will with his own property, as he is not charged by the complainant with having practiced any fraud or deception in obtaining his title thereto. Such decree as he desires may be entered, but in making this order the court must not be understood as intimating any opinion as to the effect of the decree upon any subsequent proceedings which may hereafter be instituted in behalf of complainant. Whether, under the rulings in *Badger* v. *Badger*, 1 Clifford, 237, it will or not be a bar, must remain undetermined until the question is so presented as to require the court to pass upon it.

Bill dismissed, without costs.